UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **NANCY COOK** | : | CASE NO. 3:12-cv-092 |
| Plaintiff, | : | **JUDGE THOMAS M. ROSE** |
| v. | : | |
| **J. THOMAS & CO., INC.**[1] d/b/a Waffle House | : | |
| Defendant | : | |

**ENTRY AND ORDER GRANTING DEFENDANT J. THOMAS & CO., INC.'S MOTION FOR SUMMARY JUDGMENT (Doc.# 16) AND TERMINATING THIS CASE**

Now before the Court is Defendant J. Thomas & Co., Inc.'s (hereinafter "Waffle House") Motion for Summary Judgment. (Doc. 16.) Therein, Waffle House asserts that it should be granted summary judgment on all counts because Plaintiff Nancy Cook (hereinafter "Cook") was fired due to a pattern of inappropriate behavior and not because of her age and/or gender, as the Complaint alleges.

Cook, who asserts that her employment was illegally terminated because of her age and/or gender, brings three (3) claims against Waffle House: Count I is for age discrimination in violation of 29 U.S.C. § 621, the Age Discrimination in Employment Act ("ADEA"). Count II is for age discrimination in violation of Ohio law, O.R.C. § 4112.14. Count III is for gender discrimination in violation of Ohio law, O.R.C. §§ 4112.02 and 4112.99.

---

[1] Formerly captioned as J. THOMAS & COMPANY, INC.

1

Cook's ADEA claim is before the Court pursuant to 29 U.S.C. § 621 et seq. This Court has supplemental jurisdiction over the claims arising from O.R.C. § 4112.14, and O.R.C. § 4112.02 and 4112.99 because the claims are so related that they form part of the same case or controversy. 28 U.S.C. § 1367 (2006).

A Factual Background will first be set forth. This will be followed by the Relevant Legal Standards and an Analysis of Waffle House's motion.

I. **Factual Background**

In determining whether a genuine issue of material fact exists on summary judgment, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Cook is a citizen of Ohio. (Compl. ¶ 1.) J. Thomas & Co., Inc., is an Ohio corporation doing business as The Waffle House located in Montgomery, Ohio. (Id. at ¶ 2.)

Cook began her employment with Waffle House in July of 1997. (Id. at ¶ 7.) Before her employment with Waffle House, she had previously worked as a Manager or Assistant Manager at a Frontier House restaurant, a Captain D's restaurant, and a Long John Silver's restaurant. (Deposition of Nancy Cook ("Cook Dep.") 17-18 Feb. 12, 2013.)

A. **Plaintiff's Previous Disciplinary Actions**

Between when Cook was hired in July of 1997 and the incident that, according to Waffle House, caused Cook to be fired, she received nine Associate Warnings and two Last Chance Notices.[2] (Id. at Exs. B, F-N, P.) While Plaintiff denies some of the events, she admits that

---

[2] In 1999, Cook received a warning because the commissary was short. (Id. at Ex. B.) In 2002, Cook received five warnings: three because her food costs were too high (Id. at Ex. F, G, J), one for leaving the safe open (Id. at Ex. H), and one because she didn't do a dish inventory (Id. at Ex. I). In 2003, Cook received a warning for having overtime and another warning because the safe was short $1,062. (Id. at Ex. K, L.) In October of 2008, Plaintiff received a warning because of a cash shortage and because of "leaving the commissary keys at night." (Id. at Ex. N.) Also in

2

some of the warnings were legitimate.³ Cook also testifies that she accepted some of the disciplinary actions, despite not being responsible for them, out of fear that she might lose her job if she did not. (Id. at 134.)

**B.     The Shortages**

On February 25, 2011, an audit was conducted at Cook's store and the safe was found to be $250 short. (Id. at Ex. Q.) Cook claims that the audit was conducted because she reported to her District Manager, Martin Hawkins ("Hawkins"), that the safe was short. (Id. at 137-38.) She claims that the safe was short because Ken Thompson ("Thompson"), the Area Manager, was supposed to bring her coffee cards. (Id. at 60-64.) According to Cook, when Thompson told her that he would bring her $250 worth of coffee cards, she marked the inventory sheet in the safe, per his instructions, as though she had received the cards, which caused the safe to be $250 short. (Id. at 58-64, Ex. O.)

Thompson denies that he told her that he would bring coffee cards. (Id. at Ex. Q.) According to Waffle House, Hawkins told Judith Blanton ("Blanton"), Owner, that Cook had told him that she took the money out of the safe as a loan. (Id. at Ex. O.) Cook denies that she took the money out of the safe. (Id. at 137.)

---

October of 2008, Plaintiff received a Last Chance Notice because she made a mistake on paperwork which caused the safe to be $415 over. (Id. at 131-32, Ex. M.) Finally, in March of 2011, Cook received a Last Chance Notice for falsification of paper in the safe which resulted in a shortage of $250. (Id. at Ex. P.)

³ Cook asserts that the warnings identified in Exs. H, J, and L were not merited. (Id. at 121-22, 124, 127.) She asserts that she signed them because contesting them would not have helped her. (Id. at 121, 127.) Cook admits that the warnings identified in Exs. F, G, and I were merited. (Id. at 118-21, 123.) Plaintiff said that she was willing to take the blame for the conduct described in Ex. N. because she was afraid of losing her job. (Id. at 134.) Cook could not remember the warnings identified in Exs. B, K, and M, but she admits that she signed them. (Id. at 113, 125-26, 131.)

3

A few days later, during an audit on the commissary, it was found that the commissary was short by $320. (Id. at Ex. Q.) According to Cook, she was not working on the days when the commissary shortage occurred. (Id. at 14.) According to Thompson, Cook mismanaged the commissary shortage by trying to add it to a food pull in violation of policy. (Id. at Ex. Q.) According to Thompson and coworker Teresa Coffey, Cook asked her coworkers to give her money in order to balance the safe. (Id. at Exs. Q and R.)

Cook claims that she only told her coworkers that she should ask them for the money to help fix the commissary, but did not actually ask them. (Id. at 139.) She says that her coworkers then took up a collection, on their own volition, in order to help fix the commissary.[4] (Id. at 139.)

On the second or third of March, 2011, as a result of the shortages, Cook was taken off of the schedule until an investigation could determine the cause of the shortages. (Id. at 163, Ex. Q.) During the investigation, it was revealed that, according to coworkers Coffey and Terry, Cook was threatening the waitresses when they allowed someone to order scrambled eggs with cheese or bacon, saying that she would "put their face on the grill." (Id. at Exs. R and T.) Cook insists that she was just teasing the waitresses, not threatening them. (Id. at 162.)

Waffle House alleges that they also discovered that, according to Coffey, Plaintiff regularly did not charge certain customers for their food, including her landlord. (Id. at Ex. T.) Cook claims that she always charged everyone. (Id. at 161.)

On March 7, 2011, Cook met with owner Blanton and was terminated. (Id. at 155-56.) According to Waffle House, Cook was terminated because of her unsatisfactory job

---

[4] There is a small discrepancy here: Cook claims that her coworkers took up a collection in order to help fix the commissary shortage. Waffle House's witnesses claim that she asked them for money (assumedly the "collection" to which Cook referred) in order to fix the safe shortage.

4

performance, repeated cash and commissary shortages, and failure to follow Waffle House policies. (Def.'s Mot. Summ. J. 5., Doc. 16.; Declaration of Judith Blanton ("Blanton Decl.) ¶ 9 Mar. 28, 2013.)

**C.     The Alleged Discrimination**

According to Cook, she was terminated as a result of age and/or gender discrimination. (Compl. ¶ 14, 33.) At the time of her termination, Cook was 62 years old. (Compl. ¶ 8.) According to Cook, Anthony Jones ("Jones"), another manager who is now deceased, told her that Waffle House wanted to terminate her, partly because of her age. (Cook Dep. 202-03:21.)

During Cooks's employment with Waffle House, several of the male managers went on fishing trips together organized by Thompson and Jones. (Id. at 42-43.) According to Cook, the women were not allowed to participate in the fishing trips. (Id. at 44.) Cook does not, however, allege that these trips were sponsored by the company.[5] (Id.) Cook admits that there were other, company-sponsored trips to the casino and golf trips which she was able to attend. (Id. at 49.)

Several times during Cook's employment, Thompson made references to her age, calling her an "old woman." (Id. at 79-80.) Six or seven years ago, Cook was working with Thompson and told Thompson about how she was hoeing her garden. (Id. at 79-80.) Thompson said that she was "too damn old for that." (Id.) In defense of his statement, Thompson then reiterated that she was an old woman. (Id.)

Another time, at a "family night,"[6] Thompson called Cook "old woman" when he responded to her request for a higher volume store. (Id. at 80.) According to Cook, Thompson

---

[5] Cook testified in her deposition that the fishing trips were personal fishing trips. (Cook Dep. 44.) Nevertheless, at other times in her deposition, she spoke of them as though they were company-sponsored, although that claim is never directly made. (Cook Dep. 44-45.)

[6] A dinner night to which employees bring their families.

5

specifically said "old woman, there is no way you could get a higher volume store. Welcome to Brookville." (Id.) Lastly, Thompson referred to Cook as "the old woman" when talking to another employee about her. (Id. at 82.)

About a year before Cooks's termination, she discussed retirement with her coworker, Gabe Stone ("Stone"). (Id. at 75.) Stone was frustrated that he was not getting a manager position and Cook said that maybe he could get the store in a couple of years when she retires. Stone then told Thompson that Cook was going to retire. (Id.) Six months before her termination, Thompson approached Cook at her store and told her that if she wants to retire, it was okay with him and Miss Judy, because she has worked so hard for the company. (Id. at 73.)

According to Cook, Waffle House treated her differently from the following similarly situated younger, male employees: Mike Balwich ("Balwich"), Paul Evans ("Evans"), Jason Henson ("Henson"), Mike Wheeler (Wheeler"), and Steve Dowell ("Dowell"). (Id. at 34, 41, 83, 88, 91.) She alleges that she heard rumors that Mike Balwich, a fellow store manager, reported to work drunk. (Id. at 35.) According to Cook, management knew that Balwich would report to work drunk. (Id. at 38.) Cook lacks knowledge of what, if any, consequences resulted from Balwich's behavior. (Id. at 39.)

Cook alleges that Evans, a fellow store manager, was rehired after being fired for stealing money. (Id. at 41.) Cook alleges that Henson, a store manager, was rehired after being fired for stealing money.[7] Henson allegedly stole again and was fired again. (Id. at 84-85.) According to Cook, Wheeler was originally fired for taking money and "something to do with sexual comments." (Id. at 88-89.) Four months later, Wheeler was rehired, though Cook does not know why. (Id. at 90.) He was then fired again for stealing deposits. (Id.)

---

[7] Plaintiff does not know why Henson was rehired after being fired the first time. (Cook Dep. 86-87.)

6

Dowell was allegedly fired for something to do with shortages. (Id. at 91.) He was then rehired about six months later. (Id. at 93.)

According to Cook, she was replaced by a 28 or 29-year-old male. (Id. at 97.) Finally, according to Waffle House, all of the supervisors who engaged in similar behavior to that of which Cook is accused have been terminated or permitted to resign. (Def.'s Mot. Summ. J. 10., Doc. 16., *citing* Blanton Decl. ¶ 10.)

## II.     Relevant Legal Standards

### A.     Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, and its associated caselaw, establishes the standard of review for summary judgment. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson*, 477 U.S. at 250).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ.

7

P. 56(e)).  Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party.  *Anderson*, 477 U.S. at 255.  If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affirmations are more credible.  10A Wright & Miller, *Federal Practice and Procedure*, §2726.  Rather, credibility determinations must be left to the fact-finder.  *Id*.  However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 252.  "There must be evidence on which the jury could reasonably find for the plaintiff."  *Id*.  The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  *Id*.

Finally, in ruling on a motion for summary judgment, "[a] district court is not… obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990).  Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.  The Rule 56 evidence includes the verified

pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

**B.    Discrimination Claims**

**1.    Age Discrimination**

The ADEA and Ohio law prohibit an employer from failing to hire, discharging or discriminating against an individual with respect to her or his compensation or terms, conditions or privileges of employment because of her or his age. *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009)(citing 29 U.S.C. § 623(a)(1)). Given the similarity of Ohio and federal age discrimination laws, courts generally apply applicable federal age discrimination law to Ohio claims. *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005).

A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence. *Id.* Direct evidence is evidence which, if believed, would require the conclusion that unlawful discrimination was at least a motivating factor. If a plaintiff does not have direct evidence of age discrimination, the age discrimination claim is analyzed using the *McDonnell Douglas* burden-shifting framework. *Geiger*, 579 F.3d at 622.

The first step of the *McDonnell Douglas* burden-shifting framework is that the plaintiff must establish a prima facie case of discrimination. In order to make a prima facie case, the plaintiff must show the following elements: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 510 (2002). In the case of age discrimination, according to the ADEA, the "protected group" is persons over the age of 40. 29 U.S.C. § 631 (2006).

9

One option for the fourth element of a prima facie case of age discrimination is to show that the plaintiff was replaced by a substantially younger person. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 521-22 (6th Cir. 2008).  The other option for the fourth element of a prima facie case of age discrimination is to show that the plaintiff was treated differently than similarly-situated, non-protected employees. *Zeidler*, 516 F.3d at 521-22.

If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to identify a legitimate, non-discriminatory reason for the adverse employment decision. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008).  If the employer meets this burden of production, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate, non-discriminatory reason given is a pretext for discrimination. *Id.*  Nevertheless, the overall burden of persuasion remains with the plaintiff at all times. *Id.*

The plaintiff may show that the legitimate non-discriminatory reason given by the employer is a pretext for discrimination by showing that the reason given (1) has no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Clay v. United Parcel Service*, 501 F.3d 695, 704 (6th Cir. 2007)(citing *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003)).  A reason cannot be a pretext for discrimination unless it is shown that the reason is both false and that discrimination was the real reason. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000)(citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)).  An employee may not rely upon her or his prima facie evidence to show pretext, but must, instead, introduce additional evidence of discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Geiger*, 579 F.3d 614.  Finally, consideration of

pretext focuses on the defendant's beliefs and not on the plaintiff's own perceptions. *Scott v. Thomas & King, Inc.*, No. 3:09-CV-147, 2010 WL 2630166 at *8 (S.D. Ohio June 28, 2010).

**2.  Gender Discrimination**

Claims of gender discrimination made pursuant to O.R.C. § 1402.02 are also analyzed via the *McDonnell Douglas* burden-shifting framework. *See Smith v. Board of Trustees Lakeland Community College,* 746 F. Supp. 2d 877, 893 (N.D. Ohio 2010). The prima facie case for gender discrimination is the same as the prima facie case for age discrimination, *supra*. After a prima facie case for gender discrimination is established, the analysis continues in accord with the *McDonnell Douglas* burden-shifting framework as explained for age discrimination, *supra*.

**III. Analysis**

**A.  Age Discrimination-ADEA**

**1.  Direct Evidence**

Cook alleges to have direct evidence of age discrimination. This alleged direct evidence consists of the behavior of Thompson and the alleged statement that Jones gave to Cook that "they" wanted to "get rid of her" partly because of her age. Nevertheless, even when viewed in the light most favorable to Cook, Thompson was not the person who made the ultimate decision to terminate her employment and Cook has not identified Rule 56 evidence otherwise.

In order for a discriminatory statement to be direct evidence of discrimination, the statement must come from the decisionmaker. *Geiger v. Tower Auto.*, 579 F.3d 614, 620-21 (6th Cir. 2009). Yet, according to Blanton, the owner, the decision to terminate Cook's employment was hers. Cook has not provided any evidence of direct discrimination regarding Blanton. Consequently, there is no direct evidence of discrimination and the claim of discrimination is analyzed via the *McDonnell Douglas* burden-shifting framework.

### 2. *McDonnell Douglas* Framework

#### a. Prima Facie Case

Cook has established a prima facie case for age discrimination and Waffle House does not dispute this conclusion. She is a member of the protected group of persons over the age of 40 (Element 1). Her termination was an adverse employment action (Element 3). The manager who allegedly replaced her was significantly younger, being 28 or 29 (Element 4).

The second element of the prima facie case is that Cook be qualified for the job in question. Waffle House has given no reason why Cook was not qualified, and her previous employment as a manager at other restaurants is an indication that she was qualified. Thus, there is Rule 56 evidence satisfying the second prima facie element. Therefore, Cook has identified Rule 56 evidence showing all of the elements of a prima facie case of age discrimination.

#### b. Legitimate, Non-Discriminatory Reason

After the plaintiff presents a prima facie case, the defendant has the burden of showing a legitimate, non-discriminatory reason for the adverse employment decision. In this case, the owner and CEO of the Waffle House at issue says that Cook was terminated by her because of repeated cash and commissary shortages and failure to follow Waffle House policies. (Blanton Decl. ¶¶ 7, 9.) This is a legitimate, non-discriminatory reason that is supported by Rule 56 evidence. The burden next shifts to Cook to provide evidence that this reason is a pretext for age discrimination.

#### c. Pretext

There are three options for showing pretext. Cook discusses none of them and does not identify evidence regarding them in her Response to Waffle House's Motion for Summary Judgment. This, alone, is enough to conclude that Cook has not identified Rule 56 evidence that

Waffle House's legitimate, non-discriminatory reason is a pretext for discrimination. However, in the interest of justice, the Court will consider the Rule 56 evidence presented by the Parties in the context of pretext.

Cook may show pretext by identifying evidence that Waffle House's legitimate, non-discriminatory reason (1) has no basis in fact, (2) did not actually motivate Waffle House's challenged conduct, or (3) was insufficient to warrant the challenged conduct. There is no Rule 56 evidence that Waffle House's legitimate, non-discriminatory reason had no basis in fact or that it was insufficient to warrant the challenged conduct. Thus, the Court will consider whether there is evidence that the reason given by Waffle House did not actually motivate Waffle House to terminate Cook's employment and age discrimination was the real reason.

Based upon Cook's Response and the Rule 56 evidence identified by the Parties, there are two possible reasons why Waffle House's legitimate, non-discriminatory reason did not actually motivate Waffle House to terminate Cook's employment. Neither satisfy Cook's burden.

First, Cook argues that she was treated differently than other employees who engaged in serious workplace violations. However, some of Cook's assertions in this regard are based upon what she "heard" and there is no Rule 56 evidence of what actually happened.

According to Waffle House, all of the supervisors who engaged in similar behavior to that of which Cook is accused have not retained employment with Waffle House. (Blanton Decl. ¶ 10.) Further, repeated instances of cash shortages result in the termination of employment. (Id.)

Cook asserts that some of the employees who were terminated were rehired. However, there is no evidence that Cook attempted to be rehired and she acknowledges such. Thus, Cook

13

has not identified Rule 56 evidence that she was treated differently than other similarly situated employees.

The next pretext consideration regarding age discrimination is Cook's assertion that Waffle House made numerous age-related comments. However, this argument, too, is unavailing. This argument is unavailing because the age-related comments that Cook has identified were not made by the decisionmaker. The age-related comments were made by Thompson and Jones. However, the Rule 56 evidence indicates that Blanton is the individual who made the decision to terminate Cook's employment.

In sum, there is Rule 56 evidence that Cook has a prima facie case of age discrimination. Further, Waffle House has articulated a legitimate, non-discriminatory reason for terminating Cook's employment. However, Cook has not identified evidence from which a reasonable juror could conclude that Waffle House's legitimate, non-discriminatory reason is a pretext for discrimination. Therefore, Cook's federal age-discrimination claim must fail. There are no genuine issues of material fact and Waffle House is entitled to judgment as a matter of law on Count I of Cook's Complaint for violation of the ADEA.

**B.     Age Discrimination-Ohio Revised Code**

Age discrimination claims brought pursuant to the Ohio Revised Code are considered within the same legal framework as federal age discrimination claims. Further, Cook has not identified any evidence that specifically applies to her state-law age discrimination claim beyond the evidence that applies to her federal age discrimination claim. Therefore, the result is the same. There are no genuine issues of material fact and Waffle House is entitled to judgment as a matter of law on Count Two of Cook's Complaint for violation of Ohio age discrimination law.

**C.     Gender Discrimination-Ohio Revised Code**

Cook does not claim that there is direct evidence of gender discrimination nor does she identify any evidence that could be considered direct evidence of gender discrimination. Therefore the Court will analyze her gender discrimination claim using the *McDonnell Douglas* burden-shifting framework, as the age discrimination claims were analyzed above.

**1.     Prima Facie Case**

As a woman, Cook is a member of a "protected group" for purposes of gender discrimination. Her termination was an adverse employment action and she was qualified for the job. Finally, there is Rule 56 evidence that she was replaced by someone (a man) who was not a member of the "protected group." Therefore, Cook has identified evidence of a prima facie case of gender discrimination.

**2.     Legitimate, Non-Discriminatory Reason**

The burden of production then shifts to Waffle House to articulate a legitimate, non-discriminatory reason for terminating Cook's employment. In this case, the owner and CEO of the Waffle House in question says that Cook was terminated by her because of repeated cash and commissary shortages and failure to follow Waffle House policies. (Blanton Decl. ¶¶ 7, 9.) This is a legitimate, non-discriminatory reason that is supported by Rule 56 evidence. The burden next shifts to Cook to provide evidence that this reason is a pretext for gender discrimination.

**3.     Pretext**

There are three options for showing pretext. Cook discusses none of them and does not identify evidence regarding them in her Response to Waffle House's Motion for Summary Judgment. This, alone, is enough to conclude that Cook has not identified Rule 56 evidence that Waffle House's legitimate, non-discriminatory reason is a pretext for discrimination. However,

15

in the interest of justice, the Court will consider the Rule 56 evidence presented by the Parties in the context of pretext.

The only evidence identified by Cook regarding gender discrimination is that she was replaced by a male. This, alone, is not enough. There must be more and there is no more. While this evidence may be used to establish a prima face case, it cannot be used at the same time to show pretext.

There is Rule 56 evidence that Cook has a prima facie case of gender discrimination. Further, Waffle House has articulated a legitimate, non-discriminatory reason for terminating Cook's employment. However, Cook has not identified evidence from which a reasonable juror could conclude that Waffle House's legitimate, non-discriminatory reason is a pretext for gender discrimination. Therefore, Cook's gender-discrimination claim must fail. There are no genuine issues of material fact and Waffle House is entitled to judgment as a matter of law on Count Three of Cook's Complaint for violating Ohio gender discrimination law.

## IV. Conclusion

Waffle House is granted summary judgment on all of Cook's Causes of Action. Therefore, Waffle House's Motion for Summary Judgment (doc. #16) is GRANTED. Finally, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE and ORDERED** in Dayton, Ohio, this Twenty-Sixth day of August, 2013.

**s/Thomas M. Rose**
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

    Counsel of record